*16798*

Charles F. Peterson # 3346
Peterson Law Offices
913 West River Street, Suite 420
Boise, Idaho   83702-7081
Telephone:   208-342-4633
Facsimile:   208-336-2059

Robert A. Krause
R. Daniel Fleck
Emily R. Rankin
The Spence Law Firm, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
Telephone:   307-733-7290
Facsimile:   307-733-5248

J. Edward Bell, III
Kevin R. Dean
Law Offices of J. Edward Bell, III, LLC
232 King Street
P.O. Box 2590
Georgetown, South Carolina 29442
Telephone:   843-546-2408
Facsimile:   843-546-9604

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANNON L. ALLISON, individually and as Special Administrator of the estate of CHRISTOPHER JOHN ALLISON, deceased, and ALEX ALLISON, MICHAEL ALLISON, AMANDA ALLISON, KATIE ALLISON AND MATTHEW ALLISON, individually as minors by and through their parent and guardian, SHANNON L. ALLISON, and as members of the estate inclusive, <br><br> Plaintiff, <br><br> vs. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br> Case No. _____ <br><br> **COMPLAINT** <br><br> **CIV 0 4 - 3 1 5 - S - EJL** |

1

```
                                        )
FORD MOTOR COMPANY,                     )
a Delaware corporation,                 )
                                        )
Serve on:  Registered Agent             )
C T Corporation System                  )
300 North 6th                           )
Boise, Idaho 83702                      )
                                        )
            Defendant.                  )
```

## COMPLAINT

Plaintiff, by and through her attorneys, Charles F. Peterson, Peterson Law Offices, Robert A. Krause, R. Daniel Fleck and Emily R. Rankin, The Spence Law Firm, LLC and J. Edward Bell and Kevin R. Dean, Law Offices of J. Edward Bell, III, LLC, pleads and alleges her causes of action against Defendant Ford Motor Company as follows:

### I.
### Parties And Nature Of The Case

1.      Plaintiff Shannon L. Allison is a resident of the State of Idaho and is the duly appointed special administrator of the Estate of Christopher John Allison, deceased.

2.      This action is brought through the Special Administrator on behalf of all claiming wrongful death beneficiaries as a wrongful death action pursuant to I.C. 5-311. It is also brought by Shannon Allison individually and as parent and guardian of Alex

Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison for the emotional injuries they suffered.

3.      Christopher John Allison died on July 26, 2003, as a result of a defective motor vehicle. The death occurred on Interstate 86 near milepost 30 in Power County, Idaho.

4.      Christopher John Allison resided in Pocatello, Idaho at the time of his death.

5.      Defendant Ford Motor Company (hereinafter "Ford") is a Delaware corporation with its principal place of business in Dearborn, Michigan. Defendant Ford is licensed to do business in the State of Idaho, derived and does derive substantial revenue in Idaho and designed, tested, manufactured, assembled, installed, advertised, marketed, promoted and/or sold the 1999 Ford Expedition, Vehicle Identification Number 1FMPU18LXXLA86820, that was involved in the accident that is the subject of this Complaint.

## II.
## Jurisdiction & Venue

6.      Plaintiff alleges and incorporates Paragraphs 1 through 5, inclusive, of this Complaint, as if set forth in full in this Paragraph 6.

7.      This action is brought pursuant to 28 U.S.C. §1332. The parties are citizens and residents of different states. The amount in controversy exceeds the jurisdictional

amount of seventy-five thousand dollars ($75,000.00), as set forth in 28 U.S.C. §1332, exclusive of costs and interest. This court has proper jurisdiction.

8.      Pursuant to 28 U.S.C. §1391(a), venue for this cause of action is the United States District Court for the District of Idaho. The events and omissions complained of occurred within this judicial district. This court is the proper venue.

### III.
### Facts Common To All Claims For Relief

9.      Plaintiff alleges and incorporates Paragraphs 1 through 8, inclusive, of this Complaint, as if set forth in full in this Paragraph 9.

10.     On or about July 26, 2003, Christopher John Allison, his wife Shannon Allison, their five children and another adult family member were returning home to Pocatello after a family vacation in Washington.

11.     Christopher John Allison was driving a 1999 Ford Expedition, Vehicle Identification Number 1FMPU18LXXLA86820, while towing a nineteen foot camp trailer.

12.     The Allison vehicle was traveling eastbound on Interstate 86 near milepost 30, thirty miles west of Pocatello.

13.     Another vehicle approached the Allison vehicle from behind and collided with the left front corner of the Allison's camp trailer.

4

14.     As a result of the collision, the Allison vehicle separated from the trailer, tipped onto its passenger side, slid off the left side of the road into the median and overturned several times.

15.     During the rollover, the driver's side door latch assembly failed and the driver's side door opened causing Christopher John Allison to be partially ejected from the vehicle.  As a result of the door latch assembly failure, he sustained fatal injuries.

16.     Christopher John Allison was wearing his seat belt.

17.     During the rollover, the seat belt assembly failed to prevent unnecessary spool-out and slack induced in the belt causing Christopher John Allison to be partially ejected.

18.     Defendant Ford failed to provide a vehicle that was reasonably safe and would provide adequate protection to its occupants during foreseeable accidents.

19.     Defendant Ford placed door latch assemblies and seat belt assemblies on the 1999 Ford Expedition.

20.     During the accident sequence described above, the driver's side door latch unlatched.

21.     As a result of the unlatched door latch, the driver's side door opened.

22.     Due to inadequate restraint, Christopher John Allison was partially ejected from the vehicle.

23.     Due to the unlatched door and inadequate restraint, Christopher John Allison suffered fatal injuries.

## IV.
### Aggravating Circumstances

A.      Ford's Fraudulent Conduct in Concealing the Defect

24.     Plaintiff alleges and incorporates Paragraphs 1 through 23, inclusive, of this Complaint, as if set forth in full in this Paragraph 24.

25.     On or about November 4, 1995, Ford launched and began production on what it termed "JOB1" for its new model light duty truck known as the 1997 Ford F-150 Truck under its designated platform for this vehicle identified internally at Ford as the "PN96" Truck.  This vehicle had a combined gross vehicle weight rating of less than 8500 GVWR and would include all cab variations of the PN96 F-150, including Ford's light duty F-250 Truck, F-150 Truck, Expedition (which is the vehicle at issue in this case and referred to by Ford as its "UN93" Platform vehicle), Navigator ("UN173"), 4-door F-150 SuperCrew Truck ("P225") and the Lincoln Blackwood Truck ("Cal 1").

26.     Also in November 1995, Ford obtained Federal Motor Vehicle Safety Standard certification for the F-Series trucks' door latch assembly, handle and associated hardware, pursuant to Standard No. 206 of the Federal Motor Vehicle Safety Standards, 49 C.F.R. § 571.206, relating to Door Locks and Door Retention Components ("FMVSS No. 206"), indicating that those components complied with all applicable Federal Motor Vehicle Safety Standards and was safe.  These same certifications would

6

also later be utilized and relied upon by Ford for showing compliance with FMVSS 206 for the Ford Expedition.

27.    Ford outsourced the manufacturing and assembling of truck door latches to a supplier, Dortec Industries ("Dortec"), who in turn utilized sub-assembly component suppliers Magna Donnelly ("Donnelly"), which manufactured unpainted and painted door latches, and GR Spring which supplied the door handle spring which were then assembled and supplied by and/or through Dortec as part of the final door latch assembly which included the inside and outside door handles, latches and all connecting rods and other hardware.  Upon information and belief, Donnelly manufactured the unpainted door latches in a plant in Mexico and manufactured the painted door latches in a plant in Michigan.  Additionally, GR Spring supplied all the door handle springs for both plants.

28.    Due to an engineering design and manufacturing error, the torsion spring included on the outside door handle as a component of the door latch assembly is unsafe, was not manufactured to design intent, was defectively manufactured, design drawings for the involved components contained errors and the door latch assembly installed in the Allison Expedition did not meet the minimum requirements of FMVSS No. 206 rendering it unsafe.

29.    Additionally, the door latch assembly also failed to comply with Ford's own internal design intent, design requirements and its design and safety specifications.

7

30.     Prior to July, 2003, Ford had knowledge of the unsafe conditions of the Ford Expedition and millions of other Ford vehicles which contained door latch assemblies that did not meet FMVSS No. 206 as required and Ford's own internal standards and specifications and were unsafe.

31.     The defective outside door handle, torsion spring, door latch assembly including its connecting rods could cause a driver and/or passenger door to open during a crash which could lead to injuries and deaths from complete and/or partial ejections of occupants.

32.     Based on current information, it is believed that there are in excess of three million vehicles on the road today that have the defective door latch assembly.

33.     Between Job1 for the PN96, UN93, UN173, P225 and Cal 1 vehicles and in or about March 2000, Ford, its employees, consultants, experts and suppliers conducted various testing, including tests which revealed non-compliance of certain safety related door hardware components to Ford's own internal safety standards and specifications, the FMVSS as well as the CMVSS in the defective Ford vehicles and were a potential safety hazard as doors could open in a foreseeable accident.

34.     Since approximately November, 1995, Ford and its employees knew, or should have known through a reasonable inquiry, of these serious safety related defects in its doors as well as the identified non-compliant component parts in the door latch

mechanism and assemblies of the defective Ford vehicles. They have, however, taken no action to notify the public, NHTSA, and/or Transport Canada of the safety related defects in these vehicles doors and non-compliant component parts, and/or make any repairs to the three million defective Ford vehicles potentially on the road today and their occupants at unnecessary risk of severe injury or death.

B.    The Impact of Ford's Fraud in this Case

35.    Plaintiff alleges and incorporates Paragraphs 1 through 34, inclusive, of this Complaint, as if set forth in full in this Paragraph 35.

36.    Defendant Ford and certain of its employees had actual knowledge of known safety related defects as well as the identified noncompliant component parts in Ford vehicles' door latch assemblies, including the 1999 Ford Expedition.

37.    Despite its knowledge, Defendant Ford has taken no action to notify the public or the National Highway Transportation Safety Administration of the known safety related defects in the door latch assemblies.

38.    Defendant Ford fraudulently concealed the known safety defects of its vehicles, the vehicles' dangerous propensities and the resulting noncompliance with safety standards. Instead of warning the general public about the known defects, Defendant Ford devised a scheme to deceive the general public, including Christopher John Allison and Plaintiff, by extolling the safety virtues of the defective vehicles through marketing and advertising.

39.     Defendant Ford caused an event to occur, out of which this claim arises, in that Ford designed, tested, manufactured, assembled, installed and/or sold the 1999 Ford Expedition, that included defects in the door latch assembly. Such defects in the design, testing, manufacture, assembly and/or installation were present from the design state and were known, or reasonably should have been known, to Defendant Ford prior to the date of the manufacture of the 1999 Ford Expedition and its being placed in the stream of commerce for sale to the public.

40.     Defendant Ford is a corporation, and as such can only act through its agents, servants and/or employees and it is liable for the acts and omissions of its agents, servants and/or employees.

41.     This Complaint is brought against Defendant Ford's officers, directors, managerial agents, supervisors, safety personnel, engineers and/or designers who set policy or who play an active or passive role in the policy making and/or in the designing, testing, manufacturing, assembling, installing and selling of Ford products and/or their components. Defendant Ford, as a legal entity, can only act through its officers, directors, employees and agents. As the employer of those who set policy and play either an active or passive role in the designing, testing, manufacturing, assembling, installing, and selling of its products and/or its components and placing them into the stream of commerce, Defendant Ford is responsible for their tortious acts and omissions that were the direct and proximate cause of the fatal injuries sustained

10

by Christopher John Allison, deceased, and the damages to Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison.

42.    As a direct and proximate cause and result of Defendant's acts and omissions, Christopher John Allison suffered fatal injuries and Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison suffered damages for which the Defendant is liable; said injuries are more particularly set forth below in the section of this Complaint entitled "Damages."

IV.

## First Cause Of Action
### Strict Liability

43.    Plaintiff alleges and incorporates Paragraphs 1 through 42, inclusive, of this Complaint, as if set forth in full in this Paragraph 43.

44.    Defendant Ford is strictly liable for designing, testing, manufacturing, assembling, installing, selling and/or placing its defective and unreasonably dangerous product into the stream of commerce.

45.    At all times relevant herein, the Ford Expedition described herein and its component parts were defective and unreasonably dangerous as to design, manufacture, and warnings, causing the automobile and its component parts to be in a defective condition that made them unreasonably dangerous for their intended use.

46.    At all times relevant herein, Defendant Ford marketed the 1999 Ford Expedition.

11

47.     The Ford Expedition was used in an intended and/or foreseeable manner when the accident alleged herein occurred.

48.     The door latch assembly and seatbelt assembly were defectively designed and manufactured and were unreasonably dangerous.

49.     At all times herein, Defendant Ford had a duty to ensure that the Ford Expedition was free from defects in its design and manufacture so as to ensure that the vehicle contained an adequate and reasonable door latch assembly, seatbelt assembly and that the vehicle was crashworthy in a manner to reasonably withstand foreseeable impacts without resulting in severe injury to its occupants.

50.     At all times herein, Ford had the technology and knowledge to produce a safer and more crashworthy vehicle, on terms that would have been economic and profitable to produce on a mass scale, and would have protected Christopher John Allison from the harm and injury that he suffered.

51.     Defendant Ford failed to provide a product that met all applicable state and federal regulations.

52.     Defendant Ford failed to design, test, manufacture, assemble, install, inspect, and/or sell a product that was safe for its intended use.

53.     Defendant Ford failed to warn of the inherent and latent defects in the door latch assembly and the seatbelt assembly that made the Ford Expedition dangerous and unsafe for its intended use.

12

54.    Defendant Ford designed, manufactured, assembled, installed and sold the vehicle's door latch assembly and seatbelt assembly without proper testing and without providing proper and adequate warnings of the risks and hazards associated with the defective door latch assembly and seatbelt assembly.

55.    Due to the condition of the door latch assembly and the seatbelt assembly, the dangerous and ultrahazardous product caused the death of Christopher John Allison.

56.    At the time of the accident described in this Complaint, the defective door latch assembly, as well as the seatbelt assembly, were designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce by Defendant Ford were not reasonably apparent to and/or discoverable by Christopher John Allison, Plaintiff, or other users.

57.    At all times herein, Ford breached its duty to ensure that the Expedition was crashworthy and distributed the Expedition in a defective condition.  Plaintiff alleges that the injuries to decedent, Christopher John Allison, and to Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison as identified herein were caused because the Expedition was defective in its manufacture and design and should have protected Christopher John Allison from the injuries he sustained.

58.     As a direct and proximate cause and result of the defective and
unreasonably dangerous condition of Defendant Ford's product, Christopher John
Allison suffered fatal injuries and Shannon Allison, Alex Allison, Amanda Allison,
Katie Allison, Matthew Allison and Michael Allison suffered damages for which the
Defendant is liable; said injuries are more particularly set forth below in the section of
this Complaint entitled "Damages."

## V.

### Second Cause Of Action
### Breach of Implied Warranty

59.     Plaintiff alleges and incorporates Paragraphs 1 through 58, inclusive, of
this Complaint, as if set forth in full in this Paragraph 59.

60.     Defendant Ford impliedly warranted that the products it designed,
manufactured, assembled, installed, sold and/or placed into the stream of commerce
would be safe and fit for the ordinary purposes for which they were intended.

61.     Defendant Ford breached the implied warranty described above because
Defendant Ford did not disclose that the Ford Expedition as designed, manufactured,
assembled, installed, sold and/or placed into the stream of commerce, as described
above, was defective.  As a result, the vehicle was not safe and fit for the ordinary
purpose for which it was intended.

62.     As a direct and proximate cause and result of the breach of implied
warranty, Christopher John Allison suffered fatal injuries and Shannon Allison, Alex

14

Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison suffered

damages for which the Defendant is liable; said injuries are more particularly set forth

below in the section of this Complaint entitled "Damages."

## VI.

### Third Cause Of Action
### Breach of Express Warranty

63.    Plaintiff alleges and incorporates Paragraphs 1 through 62, inclusive, of

this Complaint, as if set forth in full in this Paragraph 63.

64.    Defendant Ford expressly warranted that the automobile it designed,

manufactured, assembled, installed, sold and/or placed into the stream of commerce

was free from defects, reasonably fit for general use by the public, safe for general use

by the public, safe for its intended purpose and merchantable.

65.    Defendant Ford breached these express warranties, in that the automobile

was neither merchantable, safely designed, safely manufactured nor fit for its intended

uses.

66.    Defendant Ford further breached its warranty to Christopher John

Allison, Plaintiff and others in that its product was inherently defective, unreasonably

dangerous and ultrahazardous.

67.    The death of Christopher John Allison and aforesaid damages to Shannon

Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael

Allison were caused by misrepresentations of material facts concerning the quality

and/or character of the products designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce by the Defendant for which Defendant Ford is liable to the Plaintiff.

68.     Christopher John Allison and the Plaintiff relied upon certain misrepresentations of material fact concerning the quality and/or character of the 1999 Ford Expedition that was designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce by the Defendant, for which Defendant Ford is liable to the Plaintiff.

69.     In designing, manufacturing, assembling, installing, selling, and/or placing into the stream of commerce the vehicle described above, Defendant Ford expressly warranted that its product complied with and/or exceeded pertinent standards.

70.     Defendant Ford breached these express warranties in that the product was defective.

71.     As a direct and proximate cause and result of the breach of implied warranty, Christopher John Allison suffered fatal injuries and Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison suffered damages for which the Defendant is liable; said injuries are more particularly set forth below in the section of this Complaint entitled "Damages."

16

## VII.

### Fourth Cause Of Action
### Negligence

72.    Plaintiff alleges and incorporates Paragraphs 1 through 71, inclusive, of this Complaint, as if set forth in full in this Paragraph 72.

73.    At the time and place of the events described herein, Defendant Ford owed a duty of reasonable care to Christopher John Allison and Plaintiff to design, test, manufacture, assemble, install, sell, and/or place into the stream of commerce its product in a reasonably safe and prudent manner to avoid causing the fatal injuries to Christopher John Allison and injuries to Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison.

74.    Defendant Ford negligently designed, tested, manufactured, assembled, installed, sold, and/or delivered its product and/or components of its product into the stream of commerce.  Such negligent acts and/or omissions include, but are not limited to, the following:

   a)  failure to properly design the vehicle's door latch assembly and seatbelt assembly;

   b)  failure to properly draft and draw design drawings for the vehicle's door latch assembly and seatbelt assembly;

   c)  failure to properly manufacture the vehicle's door latch assembly and seatbelt assembly;

17

d) failure to properly inspect, test and audit door latch assembly components;

e) failure to properly test the vehicle's door latch assembly;

f) failure to properly assemble the vehicle's door latch assembly;

g) failure to supervise the design, testing, assembly, installation, and/or delivery of its occupant restraint system;

h) failure to properly design and install an occupant restraint system that is not subject to unnecessary spool-out or slack induced into the belt;

i) failure to properly design and install an occupant restraint system that will insure that the occupant when belted will remain properly seated in the seat and not permit partial occupant ejection;

j) failure to properly test the vehicle to ensure the design provides reasonable occupant protection in the event of a rollover;

k) failure to disclose known problems and defects in the subject vehicle model;

l) failure to comply with the standards of care requisite in the automotive industry insofar as providing reasonable occupant protection in a rollover;

m) failure to comply with Defendant Ford's own internal design intent and specifications, as well as it internal safety standards;

n) failure to comply with applicable motor vehicle safety standards;

o) failure to oversee the testing procedure;

p) failure to adequately warn;

q) failure to inspect for defects;

r) failure to implement a safety recall campaign;

s) failure to properly correct a known hazardous product;

t) failure to manufacture a vehicle that was safe for its intended purpose;

u) failure to procure safe component parts;

v) failure to reasonably and safely choose suppliers of component parts; and

w) otherwise failing to exercise reasonable and ordinary care under the

circumstances.

75.     As a direct and proximate cause and result of Defendant Ford's

negligence, as well as its employees, agents and/or servants, Christopher John Allison

suffered fatal injuries and Shannon Allison, Alex Allison, Amanda Allison, Katie

Allison, Matthew Allison and Michael Allison suffered damages for which the

Defendant is liable; said injuries are more particularly set forth below in the section of

this Complaint entitled "Damages."

### VIII.

### Fifth Cause of Action
### Fraud

76.     Plaintiff alleges and incorporates Paragraphs 1 through 75, inclusive, of

this Complaint, as if set forth in full in this Paragraph 76.

19

77.     Defendant Ford made representations to Christopher John Allison and Plaintiff that the automobile it designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce was free from defects, reasonably fit for general use by the public, safe for general use by the public and safe for its intended purpose.

78.     Such representations Defendant Ford made were false as the automobile it designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce was not free from defects, reasonably fit for general use by the public, safe for general use by the public and/or safe for its intended purpose.

79.     Such representations were material under all the circumstances because the automobile Defendant Ford designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce was both defective and unsafe and caused fatal injuries to Christopher John Allison.

80.     Defendant Ford knew the representations were false through various testing, reports and calculations that revealed safety related defects in Ford vehicles' door latch assemblies including, but not limited to, side doors opening upon impact.

81.     Defendant Ford intended Christopher John Allison, Plaintiffs and others to rely on the representations that the automobile it designed, manufactured, assembled, installed, sold and/or placed into the stream of commerce was free from

defects, reasonably fit for general use by the public, safe for general use by the public or safe for its intended purpose.

82.     Christopher John Allison and Plaintiff did not know the representations were false.

83.     Christopher John Allison and Plaintiff relied upon representations Defendant Ford made concerning the quality and/or character of the 1999 Ford Expedition by purchasing and using the vehicle.

84.     Christopher John Allison and Plaintiff acted reasonably under all the circumstances in relying upon Defendant Ford's representations.

85.     Plaintiff suffered damages that were proximately caused by Christopher John Allison and Plaintiffs' reliance on Defendant Ford's fraudulent representations.

86.     As a direct and proximate cause and result of Defendant Ford's fraudulent acts and omissions, Christopher John Allison suffered fatal injuries and Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison suffered damages for which the Defendant is liable; said injuries are more particularly set forth below in the section of this Complaint entitled "Damages."

## IX.

### Sixth Cause of Action
### Negligent Infliction Of Emotional Distress

87.     Plaintiff alleges and incorporates Paragraphs 1 through 86, inclusive, of this Complaint, as if set forth in full in this Paragraph 87.

88.     Defendant Ford, as well as its employees, agents and/or servants, engaged

in negligent, willful and reckless misconduct.

89.     As a direct and proximate cause and result of Defendant Ford's negligent,

willful and reckless acts and omissions alleged herein, Shannon Allison, Alex Allison,

Amanda Allison, Katie Allison, Matthew Allison and Michael Allison each suffered

severe emotional distress and commensurate physical injuries for which Defendant is

liable.

## X.

## Seventh Cause Of Action
## Willful and Reckless Misconduct

90.     Plaintiff alleges and incorporates Paragraphs 1 through 89, inclusive, of

this Complaint, as if set forth in full in this Paragraph 90.

91.     At the time and place of the events described herein, Defendant Ford

owed a duty of reasonable care to Christopher John Allison and Plaintiffs to design, test,

manufacture, assemble, install, sell, and/or place into the stream of commerce its

product in a reasonably safe and prudent manner to avoid causing the fatal injuries to

Christopher John Allison and injuries to Shannon Allison, Alex Allison, Amanda

Allison, Katie Allison, Matthew Allison and Michael Allison.

92.     Defendant Ford willfully and/or recklessly designed, tested,

manufactured, assembled, installed, sold, and/or delivered its product and/or

22

components of its product into the stream of commerce.  Such willful and/or reckless

acts and/or omissions include, but are not limited to, the following:

   a)  failure to properly design the vehicle's door latch assembly and seatbelt

      assembly;

   b)  failure to properly draft and draw design drawings for the vehicle's door

      latch assembly and seatbelt assembly ;

   c)  failure to properly manufacture the vehicle's door latch assembly and

      seatbelt assembly;

   d)  failure to properly inspect, test and audit door latch assembly

      components;

   e)  failure to properly test the vehicle's door latch assembly;

   f)  failure to properly assemble the vehicle's door latch assembly;

   g)  failure to supervise the design, testing, assembly, installation, and/or

      delivery of its occupant restraint system;

   h)  failure to properly design and install an occupant restraint system that is

      not subject to unnecessary spool-out or slack induced into the belt;

   i)  failure to properly design and install an occupant restraint system that

      will insure that the occupant when belted will remain properly seated in the seat

      and not permit partial occupant ejection;

   j)  failure to properly test the vehicle to ensure the design provides

23

reasonable occupant protection in the event of a rollover;

k) failure to disclose known problems and defects in the subject vehicle model;

l) failure to comply with the standards of care requisite in the automotive industry insofar as providing reasonable occupant protection in a rollover;

m) failure to comply with Defendant Ford's own internal design intent and specifications, as well as it internal safety standards;

n) failure to comply with applicable motor vehicle safety standards;

o) failure to oversee the testing procedure;

p) failure to adequately warn;

q) failure to inspect for defects;

r) failure to implement a safety recall campaign;

s) failure to properly correct a known hazardous product;

t) failure to manufacture a vehicle that was safe for its intended purpose;

u) failure to procure safe component parts;

v) failure to reasonably and safely choose suppliers of component parts; and

w) otherwise failing to exercise reasonable and ordinary care under the circumstances.

93.    As a direct and proximate cause and result of Defendant Ford's willful and/or reckless acts and/or omissions, as well as its employees, agents and/or servants,

Christopher John Allison suffered fatal injuries and Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison suffered damages for which the Defendant is liable; said injuries are more particularly set forth below in the section of this Complaint entitled "Damages."

## XI.

## Damages

94.     Plaintiff alleges and incorporates Paragraphs 1 through 93, inclusive, of this Complaint, as if set forth in full in this Paragraph 94.

95.     As a direct and proximate result of the defective and unreasonably dangerous condition of Defendant Ford's product, the breach of expressed and implied warranties, the fraudulent conduct and the negligent, willful and reckless acts of Defendant Ford, Christopher John Allison suffered fatal injuries and Shannon Allison, Alex Allison, Amanda Allison, Katie Allison, Matthew Allison and Michael Allison suffered damages.

96.     As a further direct and proximate result of the wrongful death of Christopher John Allison, Plaintiff has incurred the following damages:

a)  Expenses for the death and burial of the deceased in an amount to be proved at trial;

b)  The reasonable value of necessary medical, hospital and ambulance care and services received prior to the decedent's death;

c) Damages for the loss of probable services, protection, training, care, comfort, conjugal relationship and society in an amount to be proved at trial;

d) Damages for the negligent infliction of emotional distress;

e) Past and future income in an amount to be proved at trial; and

f) Any and all other relief and costs available by law.

## XII.

### Noneconomic Damages Pursuant to I.C. § 6-1603

97.    Plaintiff alleges and incorporates Paragraphs 1 through 96, inclusive, of this Complaint, as if set forth in full in this Paragraph 97.

98.    Plaintiff alleges the causes of action set forth above arise out of willful and/or reckless misconduct by Defendant Ford.

99.    Plaintiff further states that the allegations against Defendant Ford may constitute felonious acts under state and/or federal law.

100.    Plaintiff herewith notifies Defendant Ford that pursuant to I.C. §6-1603(4)(a) and (b) the limitation of awards of noneconomic damages do not apply to this matter.

WHEREFORE, Plaintiff hereby requests this Court grant the following relief:

1) For damages in an amount that will fairly and justly compensate Plaintiff for the reasonable expenses of the death and burial of the deceased;

2) Judgment against Defendant Ford for general damages in an amount consistent with the allegations set forth herein and to be proven at trial;

3) Judgment against Defendant Ford for special damages in an amount consistent with the allegations set forth herein and to be proven at trial;

4) For costs of this action and for other and further relief as the Court deems equitable and proper.

5) Plaintiff specifically reserves the right to allege punitive damages pursuant to I.C. § 6-1604.

DATED this 21 st day of June, 2004.

BY: _____

Charles Peterson #3346
913 W. River Street, Suite 420
Boise, Idaho   83702-7081
Telephone:   208-342-4633
Facsimile:     208-336-2059

Robert A. Krause
R. Daniel Fleck
Emily R. Rankin
The Spence Law Firm, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
Telephone:   307-733-7290
Facsimile:     307-733-5248

J. Edward Bell, III
Kevin R. Dean
Law Offices of J. Edward Bell, III, LLC
232 King Street
P.O. Box 2590
Georgetown, South Carolina 29585
Telephone:   843-546-2408
Facsimile:     843-546-9604

Attorneys for Plaintiff